UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUISIANA CRANE ACQUISITION, LLC | CIVIL ACTION NO. |
| VERSUS | SECTION: |
| MATT ROLLMAN | JUDGE: |
| | MAGISTRATE: |

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I.    Factual Background. ...................................................................................................2

II.   Legal Standard. ............................................................................................................7

      A.   Elements and scope of injunctive relief. ................................................................7

      B.   This Court should dispense of the requirement to post a bond. ..............................8

III.  Argument. ....................................................................................................................9

      A.   Louisiana Crane is likely to succeed on the merits of its breach of contract claims. ...........................................................................................................9

      B.   Louisiana Crane will suffer irreparable injury in the absence of injunctive relief. ..........................................................................................................10

      C.   The threatened harm to Louisiana Crane outweighs any possible harm an injunction may cause Mr. Rollman. ..........................................................11

      D.   Injunctive relief will not disserve the public interest. ............................................12

IV.   Conclusion. ................................................................................................................13

**May it Please the Court**:

Louisiana Crane Acquisition, LLC ("Louisiana Crane") requests the issuance of a Temporary Restraining Order ("TRO") without notice, to be followed by a Preliminary Injunction, after due proceedings, against Defendant, Matt Rollman. Louisiana Crane moves for injunctive relief under Rule 65 of the Federal Rules of Civil Procedure to enforce Mr. Rollman's contractual obligations under an employment agreement executed on November 8, 2019, between Louisiana Crane and Mr. Rollman (the "Employment Agreement"). The evidence and law warrant the Court's exercise of its discretion to enter a TRO, without notice, restraining, enjoining, and prohibiting Mr. Rollman, and anyone acting in concert or participation with him, from (i) using and disclosing Louisiana Crane's confidential, proprietary, and trade secret information, including confidential customer information; (ii) competing with Louisiana Crane by carrying on with or being engaged in selling, supplying, installing, servicing, inspecting, and maintaining overhead cranes and mechanical handling solutions, including fabricated box girders, overhead bridge cranes, custom jib cranes, gantry cranes, workstation cranes, wire rope hoists, and chain hoists, and providing products and services related to the foregoing; and (iii) soliciting Louisiana Crane's customers or vendors on behalf of Core Lifting, including CM Works, in violation of his non-solicitation obligations.

**I.      Factual Background.**

On November 8, 2019, Mr. Rollman executed the Employment Agreement. [Attached as Exhibit 1 to the Verified Complaint is a true and correct copy of the Employment Agreement.] In the Employment Agreement, Mr. Rollman agreed to treat all Confidential Information as strictly confidential, not to disclose Confidential Information, and not to access or use Confidential Information except as required in the performance of his authorized employment duties to Louisiana Crane or with the prior written consent of Louisiana Crane's Board of Managers.

"Confidential Information" is defined under Section 5(a) of the Employment Agreement. In particular, Mr. Rollman acknowledged in Section 7(d)(i) of the Employment Agreement that customer and vendor information is part of Louisiana Crane's Confidential Information.

Mr. Rollman agreed to the following non-competition agreement in Section 7(b) of the Employment Agreement:

> b. **Non-Competition.** Because of the Company's legitimate business interest as described herein and the good and valuable consideration offered to the Employee, the Employee shall not, during the period of time beginning on the date of this Agreement and continuing through twenty-four (24) months after the end of the Employee's employment with the Company, anywhere within the geographic area composed of the Parishes of the State of Louisiana set forth on Exhibit A hereto, whether for compensation or not, whether individually or in conjunction with any other Person, in any manner or capacity whatsoever (including without limitation as an individual, lender, employer, owner, stockholder, member, partner, director, manager, officer, employee, operator, advisor, consultant, contractor, principal, agent, volunteer, or intern), be employed by, render services to, carry on with, be engaged in, own, lend money to, guarantee the debts or obligations of, share in the earnings of, or invest in the shares, bonds, or other securities of, or permit the Employee's name to be used or employed by or in connection with, any business or Person (other than the Company Group) engaged in the same or similar business as the Company, including but not limited to the Business. For purposes of this Section 7(b), "Business" shall mean the business of manufacturing, selling, supplying, installing, servicing, inspecting, and maintaining overhead cranes and mechanical handling solutions, including fabricated box girders, overhead bridge cranes, custom jib cranes, gantry cranes, workstation cranes, wire rope hoists, and chain hoists, and providing products and services related to the foregoing.

In addition, Mr. Rollman agreed to the following non-solicitation of customers and vendors agreement in Section 7(d)(ii) of the Employment Agreement:

3

> (ii) **Non-Solicitation.** During the period of time beginning on the date of this Agreement and continuing through twenty-four (24) months after the end of the Employee's employment with the Company, the Employee shall not, anywhere within the geographic area composed of the Parishes of the State of Louisiana set forth on Exhibit A hereto, directly or indirectly solicit, contact, or attempt to solicit or contact, using any other form of oral, written, or electronic communication, including, but not limited to, email, regular mail, express mail, telephone, fax, or instant message, or social media, including but not limited to Facebook, LinkedIn, Instagram or Twitter, or any other social media platform, whether or not in existence at the time of entering into this Agreement, or meet with any of the Company's current, former, or prospective customers (including without limitation any Persons who purchased or requested quotes for goods or services of any nature or kind whatsoever from, or negotiated with, the Company), vendors, or distributors (each a "*Covered Customer/Vendor*") for purposes of (A) offering, accepting, or inquiring about goods or services related to the Business or similar to or competitive with those offered by the Company, (B) otherwise enticing away (or attempting to entice away) such Covered Customer/Vendor from transacting business with the Company, or (C) otherwise inducing (or attempting to induce) such Covered Customer/Vendor to conduct business with any other Person other than the Company. However, it will not be deemed a violation of this Section if the Employee merely updates the Employee's social media profiles, without engaging in any communication, by social media or otherwise, that is prohibited by this Section. This non-solicitation provision further includes such prohibited communications, even if the Employee is first solicited, approached, or contacted by a Covered Customer/Vendor, and the parties agree that in the event the Employee is solicited, approached, or contacted by any Covered Customer/Vendor during the period of time beginning on the date of this Agreement and continuing through twenty-four (24) months after the end of the Employee's employment with the Company, the Employee understands and agrees that the Employee is prohibited from communicating with such Covered Customer/Vendor to the extent provided in this Section. For purposes of this Section 7(d)(ii), "Business" shall mean the business of manufacturing, selling, supplying, installing, servicing, inspecting, and maintaining overhead cranes and mechanical handling solutions, including fabricated box girders, overhead bridge cranes, custom jib cranes, gantry cranes, workstation cranes, wire rope hoists, and chain hoists, and providing products and services related to the foregoing.

Both the non-competition agreement under Section 7(b) and the non-solicitation of customers and vendors agreement under Section 7(d)(ii) contain a definition of the business of Louisiana Crane, which is "the business of manufacturing, selling, supplying, installing, servicing, inspecting, and maintaining overhead cranes and mechanical handling solutions, including

4

fabricated box girders, overhead bridge cranes, custom jib cranes, gantry cranes, workstation cranes, wire rope hoists, and chain hoists, and providing products and services related to the foregoing." The non-competition and non-solicitation provisions in the Employment Agreement apply to anywhere within the geographic area composed of the Parishes of the State of Louisiana set forth in Exhibit A to the Employment Agreement:

> **EXHIBIT A**
> **RESTRICTED TERRITORY**
>
> Parishes:
>
> 1. Caddo
> 2. Bossier
> 3. Lafayette
> 4. St. Martin
> 5. Iberia
> 6. St. Mary
> 7. Terrebonne
> 8. Iberville
> 9. Assumption
> 10. Lafourche
> 11. St. Landry
> 12. Acadia
> 13. Vermillion

On July 1, 2022, without any prior notice, Mr. Rollman e-mailed Louisiana Crane's president, Harold King, his Letter of Resignation. [Attached as Exhibit 2 to the Verified Complaint is a true and correct copy of Mr. Rollman's July 1, 2022 e-mail and accompanying Letter of Resignation.]

After resigning, Mr. Rollman has been working for Core Lifting of Lafayette ("Core Lifting"), a competitor of Louisiana Crane. While working for Core Lifting, Mr. Rollman has violated the terms of this Employment Agreement with Louisiana Crane, including, but not limited to, the confidentiality, non-competition, and non-solicitation agreements. In particular, on August 3, 2022, while working for Core Lifting, Mr. Rollman sent an e-mail to an employee or

5

representative of CM Works, a vendor of Louisiana Crane, requesting products that are the type of products sold by Louisiana Crane to its customers as part of Louisiana Crane's business:



6

[Attached as Exhibit 3 to the Verified Complaint is a true and correct copy of Mr. Rollman's August 3, 2022 E-mail on behalf of Core Lifting.]

On August 11, 2022, counsel for Louisiana Crane sent a letter to Mr. Rollman demanding that he immediately cease and desist from his acts in violation of the Employment Agreement, including, but not limited to, (i) using and disclosing Louisiana Crane's confidential, proprietary, and trade secret information, including confidential customer information; (ii) competing with Louisiana Crane by carrying on with or being engaged in selling, supplying, installing, servicing, inspecting, and maintaining overhead cranes and mechanical handling solutions, including fabricated box girders, overhead bridge cranes, custom jib cranes, gantry cranes, workstation cranes, wire rope hoists, and chain hoists, and providing products and services related to the foregoing; and (iii) soliciting Louisiana Crane's customers or vendors on behalf of Core Lifting, including CM Works, in violation of his non-solicitation obligations. [Attached as Exhibit 4 to the Verified Complaint is a true and correct copy of Louisiana Crane's August 11, 2022 Cease and Desist Letter.] On August 15, 2022, counsel for Mr. Rollman replied, without any explanation, that Mr. Rollman is complying with the terms of his Employment Agreement. [Attached as Exhibit 5 to the Verified Complaint is a true and correct copy of counsel for Mr. Rollman's August 15, 2022 Letter in Response to Cease-and-Desist Letter.]

**II.    Legal Standard.**

**A.  Elements and scope of injunctive relief.**

Federal Rule of Civil Procedure 65(b) authorizes equitable relief in the form of a temporary restraining order ("TRO") without notice when it appears that "immediate and irreparable injury, loss, or damage" will result to the moving party. FED. R. CIV. PROC. 65(b)(1)(A). A moving party is entitled to such equitable relief upon a showing of the four elements traditionally required for a preliminary injunction:

      (A)      likelihood of success on the merits;

      (B)      likelihood of suffering irreparable harm in the absence of the relief sought;

      (C)      the threatened injury to plaintiff outweighs the threatened harm to defendant; and

      (D)      the relief will not disserve the public interest.

*Brock Services, L.L.C. v. Rogillio,* 936 F.3d 290, 296 (5th Cir. 2019) (citing *Cardoni v. Prosperity Bank,* 805 F.3d 573, 579 (5th Cir. 2015)). Injunctive relief "is customarily granted on the basis of procedures that are less formal and on evidence that is less complete than a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing." *University of Texas v. Comenisch,* 451 U.S. 390, 395 (1981).

      Additionally, because Mr. Rollman, on behalf of Core Lifting, is diverting customers and business to a competitor of Louisiana Crane, the TRO should prohibit Mr. Rollman and anyone acting in concert or participation with him from engaging in prohibited activities. Courts have held that individuals cannot avoid contractual obligations by doing through another, such as a company, the exact thing the individual is restricted from doing. *See*, *e.g.*, *CDI Corp. v. Hough*, 2008-0218 (La. App. 1 Cir. 3/27/2009), 9 So. 3d 282, 294 ("[A]n injunction that would allow [the company] to do the exact same thing that [the individual] is prohibited from doing individually would be worthless."); *Trost v. O'Connor*, 2006–1281 (La. App. 3 Cir. 4/4/07), 955 So.2d 246 (finding that an individual could not sidestep contractual obligations by selling and forming business entities and instructing others to perform activities he was restricted from performing); *see also* FED. R. CIV. PROC. 65(d)(2); *J.P. Morgan Sec. LLC*, 2016 WL 7223358, at *2 (restraining those in active concert or participation with the defendant).

      **B. This Court should dispense of the requirement to post a bond.**

      Although the Federal Rules of Civil Procedure make the posting of security a prerequisite to granting the relief Louisiana Crane seeks, this Court has the discretion to require whatever

amount serves the interests of justice. FED. R. CIV. P. 65(c) (bond must be posted "in such sum as the court deems proper.") Here, any harm that Mr. Rollman may suffer due to the issuance of a temporary restraining order and preliminary injunction results solely from his deliberate decision to breach his contract with Louisiana Crane. Thus, considering the nature of the relief sought, this Court should dispense with Louisiana Crane's obligation to post a bond.

### III. Argument.

Louisiana Crane has satisfied all four elements to support the granting of a TRO, which are supported by compelling and competent evidence, including a valid and enforceable Employment Agreement and a Verified Complaint detailing specific factual instances of Mr. Rollman's breaches of the Employment Agreement. Thus, this Court should enter a TRO enjoining Mr. Rollman from engaging in conduct in further violation of his Employment Agreement and obligations to Louisiana Crane.

#### A. Louisiana Crane is likely to succeed on the merits of its breach of contract claims.

The Louisiana statute governing non-competition agreements unambiguously directs that "every contract or agreement, or provision thereof, which meets the exceptions as provided in this section, *shall be enforceable*." La. R.S. 23:921(A)(1) (emphasis added); *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019). Under Louisiana law, a non-competition agreement meets the exception in the statute and "shall be enforced" where the employee agrees "to refrain from . . . carrying on or engaging in business similar to the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. 23:921(A)(1) and (C). In addition, in Louisiana, an agreement by an employee not to solicit an employer's vendors is "strictly contractual," does not restrain an employee's exercise of the employee's profession, trade, or business, and is not restricted by LA. REV. STAT. § 23:291. *Neill*

*Corp. v. Shutt*, 2020-0269, p. 10 (La. App. 1 Cir. 1/25/2021), 319 So. 3d 872, 880; *see also CDI Corp. v. Hough,* 2008-0218 (La. App. 1 Cir. 3/27/2009), 9 So. 3d 282, 291–92.

Louisiana Crane is likely to succeed on the merits of its breach of contract claims because Mr. Rollman is violating the contractual obligations in his Employment Agreement by, among other violations, (i) using and disclosing Louisiana Crane's confidential, proprietary, and trade secret information, including confidential vendor or customer information; (ii) competing with Louisiana Crane by carrying on with or being engaged in selling, supplying, installing, servicing, inspecting, and maintaining overhead cranes and mechanical handling solutions, including fabricated box girders, overhead bridge cranes, custom jib cranes, gantry cranes, workstation cranes, wire rope hoists, and chain hoists, and providing products and services related to the foregoing; and (iii) soliciting Louisiana Crane's customers or vendors on behalf of Core Lifting, including CM Works, in violation of his non-solicitation obligations.

**B. Louisiana Crane will suffer irreparable injury in the absence of injunctive relief.**

While irreparable injury will most certainly result in the absence of injunctive relief, Louisiana Crane is not required to make this showing. "[I]n the event an employee enters into an agreement with his employer not to compete, pursuant to La. R.S. 23:921, and fails to perform his obligation under such an agreement, the court shall order injunctive relief even ***without a showing of irreparable harm***, upon proof by the employer of the employee's breach of the noncompete agreement." *West Carroll Health System, L.L.C. v. Tilmon*, 47,152, p. 8 (La. App. 2 Cir. 5/16/12), 92 So. 3d 1131, 1136 (citing *Vartech Systems, Inc. v. Hayden*, 05–2499 (La. App. 1 Cir. 12/20/06), 951 So. 2d 247; *Clear Channel Broadcasting, Inc. v. Brown*, 04–133 (La. App. 4 Cir. 3/30/05), 901 So. 2d 553, 557; LA. REV. STAT. § 23:921(H)) (emphasis added). Thus, this Court should issue a TRO and preliminary injunction even if Louisiana Crane has not made a showing of irreparable harm, which it has done.

Nevertheless, loss of Louisiana Crane's business opportunities causes substantial harm to its position in the infusion services business, which erodes the company's goodwill. *Corrosion Specialties and Supply, Inc.* v. *Dicharry,* 93-196 (La. App. 5 Cir. 1994), 631 So.2d 1389, 1392 ("[h]arm to a competitive position . . . constitutes irreparable harm for which injunctive relief may be had"). In fact, as specifically acknowledged in Section 7(g) of the Employment Agreement, Mr. Rollman's breach of the confidentiality, non-competition, and non-solicitation provisions will cause irreparable injury and incalculable harm to Louisiana Crane:

> g. **Breach of Covenants.** The Employee acknowledges and agrees that any breach or threatened breach of the provisions of Section 5, 6, and/or 7 of this Agreement (collectively, the "***Noncompetition Provisions***") will cause irreparable injury and incalculable harm to the Company and accordingly, in addition to exercising any other remedies at law or equity which may be available to it under this Agreement or otherwise, the Company will be entitled to injunctive and other equitable relief for such breach or threatened breach. Resort by the Company to such injunctive or equitable relief will not be deemed a waiver of or limitation on any right or remedy which the Company may have with respect to such breach or threatened breach, which include, without limitation, the right of the Company to recover reasonable attorneys' fees incurred by the Company in connection with, or as a result of, the enforcement of this Agreement and to terminate any discretionary or non-vested entitlements, including severance, bonuses, retirement payments, or compensation of any kind being paid to the Employee.

Thus, Louisiana Crane can establish a likelihood of suffering irreparable harm.

### C. The threatened harm to Louisiana Crane outweighs any possible harm an injunction may cause Mr. Rollman.

The potential harm to Louisiana Crane, which comes in addition to harm already suffered, greatly outweighs any possible harm to Mr. Rollman. *See Newsouth Communications Corp. v. Universal Telephone Co.*, 02-2722, 2002 WL 31246558, *23 (E.D. La. Oct. 4, 2002) (finding that defendants had breached nonsolicitation and noncompete agreements, and holding that that "the threatened injury to plaintiff's business if injunctive relief is denied heavily outweighs the threatened injury to defendants if injunctive relief is granted"). The potential harm to Mr. Rollman is mitigated by the limited scope, time, and/or geographic area applicable to the obligations at

issue. In fact, Louisiana Crane is simply asking this Court to require Mr. Rollman to honor promises he already made, and in exchange for which he received substantial compensation, confidential information, and customer relations opportunities in the industry. The potential for harm to Mr. Rollman is non-existent, as the only activities to be prevented by an injunction are those that he is already barred from performing as a result of his contractual and legal obligations. The entry of the TRO would simply maintain the *status quo* between the parties until such time as the Court can rule on a preliminary injunction and the merits.

### D. Injunctive relief will not disserve the public interest.

Louisiana Crane seeks to ensure that the promises it has relied upon and the Employment Agreement that it has entered into are fulfilled and that its interests are protected. It simply wishes to have Mr. Rollman live up to the guarantees he made to Louisiana Crane, namely that he will not compete with or use confidential information of Louisiana Crane for his own benefit or to benefit a third party. A business should be able to rely upon the agreements it makes, and it is the duty of the court system to ensure parties are protected from injury caused by a breach.

An injunction to enforce the correct application of the law, in and of itself, serves the public interest. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (finding that the public is served when the law is followed). Protecting against the misappropriation of trade secrets is thus in accordance with the public interest. *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014) (finding that it was in the interest of public policy to prohibit the sale and use of M3 products containing infringing source code and that were derived from the improper misappropriation of trade secrets). Granting a TRO and a preliminary injunction "will not disserve the public interest." *J.P. Morgan Sec. LLC v. Manne*, 16-818, 2016 WL 7223358, at *6 (M.D. La. Dec. 12, 2016). The Agreement is valid and enforceable, and

"employers have a substantial interest in ensuring these contracts are enforced." *See id.* "Clients likewise have an interest in ensuring that their information is not improperly used." *Id.*

IV. **Conclusion.**

The evidence and law warrant the Court's exercise of its discretion to enter a TRO restraining, enjoining, and prohibiting Mr. Rollman, and anyone acting in concert or participation with him, from (i) using and disclosing Louisiana Crane's confidential, proprietary, and trade secret information, including confidential customer information; (ii) competing with Louisiana Crane by carrying on with or being engaged in selling, supplying, installing, servicing, inspecting, and maintaining overhead cranes and mechanical handling solutions, including fabricated box girders, overhead bridge cranes, custom jib cranes, gantry cranes, workstation cranes, wire rope hoists, and chain hoists, and providing products and services related to the foregoing; and (iii) soliciting Louisiana Crane's customers or vendors on behalf of Core Lifting, including CM Works, in violation of his non-solicitation obligations.

Respectfully,

s/Debra J. Fischman
DEBRA J. FISCHMAN (# 5578)
RYAN D. ADAMS (# 27931)
STUART D. KOTTLE (# 37194)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Twenty-eighth Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
E-mail: dfischman@shergarner.com
E-mail: radams@shergarner.com
E-mail: skottle@shergarner.com

**ATTORNEYS FOR LOUISIANA CRANE ACQUISITION CORPORATION**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing pleading has been filed electronically in this Court's CM/ECF system on this 30th of September, 2022 and that it is being served on defendant's last known attorney, Mark R. Pharr, III at his e-mail address, tiger@gallowaylawfirm.com, and on the defendant at the following address:

Matt Rollman
508 Annaburg Drive
Youngsville, LA 70592

                                                  s/Debra J. Fischman
                                                  DEBRA J. FISCHMAN